429 So.2d 328 (1983)
The STATE of Florida, Appellant,
v.
Daniel DELGADO-ARMENTA a/K/a "Tijuana," Julian Mejia Aviles a/K/a "Negro," and Jesus Rangel Reyes a/K/a "Pellon," Appellees.
No. 81-943.
District Court of Appeal of Florida, Third District.
March 1, 1983.
Rehearing Denied April 27, 1983.
*329 Jim Smith, Atty. Gen. and Calvin L. Fox, Asst. Atty. Gen., for appellant.
Bennett H. Brummer, Public Defender and Michael L. Von Zamft and Denis Dean, Sp. Asst. Public Defenders, for appellees.
Before HENDRY, NESBITT and DANIEL S. PEARSON, JJ.
NESBITT, Judge.
The state appeals from a trial court order which suppressed the confessions of three defendants charged with first degree murder and armed robbery.
The trial court's ruling comes to this court with a presumption of correctness and the trial judge's conclusions will not be overturned where there is substantial competent evidence to support it. Lane v. State, 353 So.2d 194 (Fla.3d DCA 1977), cert. denied, 358 So.2d 131 (Fla. 1978). However, where the trial court's determination is shown to be predicated upon an incorrect application of the law or without basis in the evidence, we will reverse. State v. Riocabo, 372 So.2d 126 (Fla. 3d DCA), dismissed, 378 So.2d 348 (Fla. 1979).

Voluntariness of Confessions

A. Sufficiency of Miranda[1] Warnings
The first basis upon which the defendants sought to suppress their confessions was that they were not clearly and adequately advised of their Miranda rights. The defendants, who are Mexicans with little or no understanding of the English language, signed a Spanish waiver of rights form. They were orally advised of their rights from an English form translated into Spanish by an interpreter, while simultaneously reading those rights from the Spanish form. Finally, their statements, including the recitation of Miranda warnings, were transcribed and presented to the defendants for review with the aid of an interpreter. The pages were initialed to signify that the transcription was accurate. Those statements, which have been made part of the record indicate that the defendants were orally asked the question, "Are you willing to answer any questions without the presence of an attorney at this time?" However, the Spanish form which was read and signed by the defendants contains the question, "Are you willing to answer any questions that are made to you?" The defendants successfully argued below that this Spanish form was constitutionally insufficient and that despite the correct oral pronouncement the defendants were inadequately advised of their rights.
In California v. Prysock, 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981), the Supreme Court rejected the argument that Miranda warnings which did not explicitly inform the defendant of his right to have an attorney appointed before further questioning, were inadequate, reasoning that:
This Court has never indicated that the "rigidity" of Miranda extends to the precise formulation of the warnings given a criminal defendant. See, e.g., United States v. Lamia, 429 F.2d 373, 375-376 (CA2), cert. denied, 400 U.S. 907, 91 S.Ct. 150, 27 L.Ed.2d 146 (1970). This Court and others have stressed as one virtue of Miranda the fact that the giving of the warnings obviates the need for a case-by-case inquiry into the actual voluntariness of the admissions of the accused. See Fare v. Michael C., 442 U.S. 707, 718, 99 S.Ct. 2560, 2568, 61 L.Ed.2d 197 (1979); Harryman v. Estelle [616 F.2d 870 (CA5)] supra. Nothing in these observations suggests any desirable rigidity in the form of the required warnings.
Quite the contrary, Miranda itself indicated that no talismanic incantation was required to satisfy its strictures.
*330 California v. Prysock, 453 U.S. at 359, 101 S.Ct. at 2809. Prysock was told that he had the right to talk to a lawyer before questioning and all during questioning and that he had the right to have a lawyer appointed at no cost. This was held to be sufficient to satisfy the constitutional mandate.
In the present case, each defendant was told, "If you want an attorney to represent you at this time or at any time during questioning you are entitled to such counsel," and "If you cannot afford an attorney and so desire, one will be provided without charge." We find that these two warnings, which were almost identical to those given in California v. Prysock, supra, satisfied the constitutional requirement that the defendant be told that he has a right to have an attorney appointed before further questioning. The adequacy of the warnings is not affected by the discrepancy between the English and Spanish form on a purely superfluous question. Accordingly, we find the trial court incorrectly interpreted the law with respect to the sufficiency of Miranda warnings and find that the confession was not rendered involuntary on this basis.

B. Waiver of Miranda Rights
The trial judge also relied upon the defendants' lack of intelligence in reaching his conclusion that the defendants did not make a knowing and intelligent waiver of their Miranda rights.[2]
At the hearing on the motions to suppress, the defendants neither raised the issue nor presented evidence of their mental capacities. The only evidence which even remotely related to intelligence was the interpreter's comment that "by the handwriting, [Aviles] has a very limited education," and Detective Venturi's affirmative response to the question, "You determined that Mr. Reyes had a limited ability to read and write English, is that not right?" Even if these observations are accepted as true, limited education or understanding of the English language can hardly be equated with a lack of intelligence. Therefore, finding an absence of evidence as to the defendants' lack of intelligence, we are compelled to reject the trial court's determination on this issue. See State v. Barnes, 245 So.2d 108 (Fla. 3d DCA), cert. denied, 248 So.2d 170 (1971).[3]
Accordingly, we reverse that portion of the order which granted the defendants' motion to suppress on the basis of the insufficiency of Miranda warnings or the lack of an intelligent waiver.

Illegal Arrest of Reyes
In the motion to suppress, defendant, Reyes, raised the additional argument that he was seized in violation of his constitutional rights under Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) and therefore his subsequent confession was inadmissible under Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The trial court agreed and granted Reyes' motion to suppress on this basis as an alternative to the ground previously discussed. We affirm the trial court's order although we do so on a different basis than that relied on by the trial court.
*331 The record reflects that Reyes was taken into custody at the Ventura Motel when the police arrived to arrest co-defendant, Aviles, on a warrant for a robbery unrelated to the crimes charged herein. Reyes was taken by the officers to the Hallandale police station and later voluntarily accompanied a detective to Dade County where he was formally arrested. The confession which Reyes seeks to exclude was given after his arrival in Dade County.
When a defendant makes a claim that his confession was the product of a seizure in violation of the Fourth Amendment, he bears the initial burden of showing that there was, in fact, a seizure. State v. Dodd, 396 So.2d 1205 (Fla. 3d DCA 1981), aff'd on other grounds, 419 So.2d 333 (Fla. 1982). We find that the police officers' actions in taking Reyes to the Hallandale police station constituted a significant interference with the defendant's liberty sufficient to activate the defendant's fourth amendment rights.
[D]etention for custodial interrogation  regardless of its label  intrudes so severely on interests protected by the Fourth Amendment as necessarily to trigger the traditional safeguards against illegal arrest.
Dunaway v. New York, 442 U.S. 200, 216, 99 S.Ct. 2248, 2258, 60 L.Ed.2d 824 (1979). See also McAnnis v. State, 386 So.2d 1230 (Fla. 3d DCA 1980). Thus, at the point when the defendant's liberty was curtailed, the constitutional protections incident to an arrest came into play. The record clearly indicates that this seizure was accomplished without the aid of a warrant. The defendant, therefore demonstrated that a warrantless arrest occurred, and a presumption of illegality was raised, shifting the burden to the state to show that the arrest was valid. State v. Dodd, supra; State v. Hinton, 305 So.2d 804 (Fla. 4th DCA 1975). The trial court concluded, based on Payton, that the arrest was illegal.
The courts have consistently held that, except in special situations, an entry into the home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant. Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). In Payton, the court stated:
In terms that apply equally to seizures of property and to seizures of person, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.
Payton v. New York, 445 U.S. at 590, 100 S.Ct. at 1382. The threshold to Reyes' home[4] was crossed on the basis of a valid warrant for a co-occupant; therefore, the officers were lawfully where they had a right to be. Under such circumstances, Payton is inapplicable. If the officers acted upon probable cause, they could make an arrest in the home. State v. Cone, 426 So.2d 1047 (Fla. 3d DCA 1982).
A defendant may not be seized and transported to the police station for interrogation, absent probable cause. Dunaway v. New York, supra. In the present case, there is no evidence that the officers acted with probable cause; in fact, the arresting officers did not even testify. The record indicates merely that the officers, while arresting Aviles on a proper warrant, brought Reyes to the station for questioning. In Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), the Supreme Court held:
Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be.
444 U.S. at 91, 100 S.Ct. at 342.
We find that Reyes' presence in the room with Aviles was insufficient to create probable *332 cause as to Reyes. The state has therefore failed to satisfy its burden of proving that there was a valid arrest. Consequently, the subsequent confession, tainted as it was by the illegal arrest, cannot be used as evidence against defendant Reyes.
Accordingly, we reverse the trial court's order suppressing the confessions of Aviles and Delgado-Armenta and affirm the suppression of Reyes' confession.
Affirmed in part; reversed in part and remanded for further proceedings.
DANIEL S. PEARSON, Judge, concurring specially.
The majority opinion correctly concludes that Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), is inapplicable to the case at bar because the police, in possession of a valid arrest warrant for a co-resident, were lawfully in Reyes' "home." My concern is that this conclusion implies that were it not for these circumstances, Payton would apply. That simply is not so. I think it should be made clear, as we have previously done, see State v. Cone, 426 So.2d 1047 (Fla. 3d DCA 1983) and State v. Thomas, 405 So.2d 462 (Fla. 3d DCA 1981), that merely because an arrest is illegal under Payton, that illegality serves only to taint a search of the defendant's home leading up or incidental to the arrest and has no bearing whatsoever on the issue of the admissibility of the defendant's confession.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] It may be that the trial court so found based upon a misapprehension that the parties had stipulated to the defendants' lack of intelligence. None of the defendants has argued this in support of the order appealed  nor do we find such a stipulation in the record.
[3] Even if there had been some evidence of mental incapacity, that alone would not render the confessions invalid, Ross v. State, 386 So.2d 1191 (Fla. 1980), but would only be one factor to consider under the totality of the circumstances. Ross, supra, State v. Chorpenning, 294 So.2d 54 (Fla. 2d DCA 1974). See also Annot., 8 A.L.R. 4th 16 (1981). As this court recently stated in Myles v. State, 399 So.2d 481, 482 (Fla. 3d DCA 1981):

Although mental capacity may be considered in determining whether under the totality of circumstances a confession is involuntary, the lack of mental capacity is generally considered only as it relates to credibility and not admissibility, and a confession will not be excluded on these grounds where it is shown that the defendant understands his rights. (citations omitted)
[4] The parties stipulated that the motel was the defendant's residence.